All right, we've got two cases in this calendar, and the panel has been reconstituted by the addition of our friend and colleague, Judge Richard Goldberg, who is sitting here by designation. We'll hear Holmes against Schoharie Central School District. Good afternoon, may it please the Court. My name is Brian Glass for David Holmes. As the Court, I'm sure, is aware, First Amendment cases in the public employment context are extremely fact-sensitive. There's been a lot of litigation in this area, and you have to sort of look at each case uniquely. In this case, we really didn't have an opportunity to develop anything because the case was dismissed right from the outset. I believe that Lane v. Franks provides a good outline for this type of case, and Judge Sotomayor's decision in that case actually has a lot of analogy to this case. At first glance, the employer is just trying to pass this off as this was a computer specialist. All he did was comply with the subpoena, but it's far more than that. If the facts had come out during the case, what Mr. Holmes was really doing here was questioning the integrity of the district's actions towards an elementary school principal. You've got to explain why he, an IT in the school system, suddenly becomes a citizen. As I read the facts in the case, he submitted documents relative to what he was doing at the IT thing during discovery. Is that correct? The standard course would be that if he received the subpoena, he would give it to the district's counsel. The district's counsel would review that, and then they would make a determination what to turn over. What Mr. Holmes did here that got the district so upset was that when he got the subpoena directly from the counsel for the teacher or the elementary school principal who was being disciplined, he turned it over on his own. What he was really not doing, he wasn't just doing routine, ordinary job responsibilities. He was doing a form of speech in this case, and that speech was, I question the integrity of the district's process here. Ms. Gillis, who he was going to serve as a witness for as well in the trial, is being targeted because the district is playing games with the document discovery. If it was just an ordinary job responsibility of turning over, complying with the subpoena, turning it over, that's different than saying, I'm going to give it over knowing that I really should be giving it to the district. He's in a form of speech here that's not within the ordinary job responsibilities. And that does have some parallels to Lane versus Franks, where Mr. Lane is testifying contrary to the interests of his employer. He got fired because he caused another person to be disciplined, and he was retaliated against that. And Judge Sotomayor, in that decision, if you read it closely, recognized that as a form of speech, compelled testimony. Now, this is a compelled subpoena, but he's not complying with the ordinary job responsibilities. If he turned it over to the district council, I would understand that to be speech. But that's how the district's trying to represent this. But this is more than that. This is going beyond and making, because he was going to be a witness, that would be protected against the district's interest. And he's also providing documents against the district's interest. So it's our position that this is not just an ordinary compliance with the subpoena of someone in that role. I did want to bring the court's attention, I believe Judge Livingston was on a case called Smith versus County of Suffolk. And that also talked about the same issue of what's the citizen analog? This is a very complicated question, but this was a police officer, a lieutenant, who was using his email to turn over information about certain cases to the press. And so, again, he was acting contrary to the district's interest. He was disciplined for doing that. And you could question whether Mr. Holmes should be disciplined for doing what he did, too. But the First Amendment question really is, is he making a form of speech by acting contrary to their interest? And if you read the district's brief, the district is always talking about simply he's just doing his ordinary job responsibilities. If the factual development was allowed to come out and we could proceed and this was remanded back, we would explain that this was not just simply, this is about the integrity of the process. And, in fact, we have an email from the council who was upset that Mr. Holmes did that, saying we understand that you're questioning the integrity of our process and said you didn't do the right thing here. And that's what we believe ultimately led to his termination. So, you know, if you look at the Smith v. Kennedy of Suffolk, 776 F3rd 114, if you look at Lane vs. Franks, we believe it's the kind of discipline that these people are facing, these similar plaintiffs are facing, by speaking out and doing something adversarial to their employer. And that was really the only issue that the judge heard considered at this stage. So there may be other arguments, but we need a chance to develop that record, and we'd ask that this be remanded for further factual development. Can I just ask that you said that the regular process would be that he would turn the subpoena over to a lawyer who would review it, and then he would take it back and find whatever emails existed responsive to it and then turn it over? Yeah, the district's counsel, who was representing the district in that case, said, the procedure for this kind of, if you get a subpoena like this, you come to me, you turn over the documents to me, I'll do a review, I'll decide what to turn over to the district. What Mr. Holmes was doing, he was sympathetic to the person under discipline. He actually just gave it right to the counsel and just happened to CC the district counsel at the same time, and the district counsel was extremely upset with him for doing that. So this was not within the ordinary routine. You could expect that if you're the computer tech guy for a district, what you're going to do is, if you get a subpoena, you're going to go to your employer, your superintendent, and say, I got this subpoena, here's the documents, you decide what to do. He jumped the gun, but the reason he did that was because he was uncovering the fraud, the integrity of the process, and that actually did help Ms. Gillis settle the case for something far less than termination. They settled this proceeding. He didn't end up testifying because the case ended up settling, partially because he revealed the light. He shed the light on the games they were playing with these e-mails. And so this is, it's hard, I understand the facts are a little convoluted here, but the facts really are that what he's doing is he's actually acting on behalf of, you know, doing the right thing on behalf of truth by not letting the district get away with not doing its lawful compliance with discovery. Thank you. Good afternoon. May it please the court, I'm Andrea Demers on behalf of the respondents in this matter. The appellant's counsel was indicating that there was a typical procedure or things that would typically be done with respect to when Mr. Holmes received a subpoena of this nature. The issue here is that it's pure speculation, between speculation about what the typical procedure was, what contents of an e-mail were, or even what Mr. Holmes' intent was with respect to possible testimony on behalf of Ms. Gillis. We simply don't know any of these things. For the purposes of a 12B6 motion, we're confined to the four corners of the complaint. And in this case, the four corners of the complaint simply don't provide for a cause of action for First Amendment retaliation. The only speech that the plaintiff alleges in their complaint was responding to a subpoena for e-mails. That's the only speech that's alleged. Here, the plaintiff was the presumptive IT department for the school district. When he responded to the subpoena to turn over the archived e-mails, he was doing so in his role and within the scope and duties that he possessed for his employment. His speech was not public. The district court found that his speech was not public. He was acting as an employee. And as a result, the school district is entitled to act upon that as part of their control of his employment. They also cannot add the speculation or allegation that there was some sort of unlawful act or cover-up taking place with respect to the e-mails. Again, we don't know that. It's not alleged in the complaint. It is brought up in the opposition to our initial motion as well as the appeal. But it wasn't in the complaint. We simply don't know that information. And as plaintiff himself points out, he never did testify on behalf of Ms. Gillis. So that part of the speech simply isn't at issue here. The appellants relied fairly heavily on the Lane v. Franks case. It's clearly distinguishable from the case at hand. Lane v. Franks dealt with a subpoena to appear and testify in a criminal proceeding. That's simply not the case here. Again, while we have a subpoena in this case, it was for archived e-mails. As the IT person at the school district, the plaintiff was the one who had the ability to access those. In plaintiff's complaint, they admit that there were earlier issues when the appellee, Catherine Gerbino, tried to access the archived e-mails. She was unable to do so. She needed the IT department to help her with that. She got the IT department's help with that. Again, this was part of his job duties and responsibilities. It wasn't about protecting someone's ability to go outside of their job duties and responsibilities and testify truthfully in court. That's simply not what is at issue here. That is what was at issue in Lane v. Franks. It's distinguishable from the case at hand. And again, while the case law, as appellant pointed out correctly, is very fact-specific with respect to public employment and First Amendment claims, and that there are gray areas, it remains that even though the plaintiff may have gained the information in the course of his employment, if the speech itself was part of his job duties and responsibilities, it's not protected by the special provisions of the First Amendment. All right. Mr. Glass? Yes. You've reserved three minutes. Some brief rebuttal. The complaint does allege in paragraph 23 and 24, if you look at 839, the school district was informed the plaintiff was listed as a witness for Ms. Gillis, who was the principal who would be subject to discipline. It does allege that he received a subpoena in the mail, and that he turned it over directly. I mean, there are facts pled here. I mean, the questions of intent and speculation should be developed on factual discovery. What they're saying is there wasn't enough detail here for us to know enough what he's saying, and that's subject to speculation. But that could come up in factual discovery, and that's why this should be remanded. I mean, we could amend the complaint to add a few more details, but some of the intent of what the district might be thinking by Ms. Gillis, by him supporting Ms. Gillis, would come up in factual discovery. And so, if there's a basis under Lane versus Franks or these cases to find liability, and I believe Lane is saying it doesn't matter if you're employed by the district or not, it really depends on the context of the speech. Judge Sotomayor reversed the district court and the circuit court on that case, and they found that, in fact, there would be enough, even if Lane finds out in the context of doing an audit and reveals it to outside sources. And this is what he's doing. He's speaking up for the truth, and they're just characterizing this as this is just his job. This is not his job. The job would be give it to the superintendent, stay out of it, stay out of this. He was involved in this case. He was involved in the truth coming out. And we have an email that we presented at discovery that would say this is about the integrity of the discovery process of the district. And that is something that is under Lane, I believe, is something that can be pursued. The integrity of truth is a protected right that's considered speech under the First Amendment. So I'd like you to consider remanding it back to the district court. Thank you. Thanks very much, Mr. Glass and Mr. Mears. Got a long trip back. Thank you both for your arguments. We reserve the decision. You'll hear from us in due course.